**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISON**

| | |
|---|---|
| ALEJANDRA NARCIO, | |
| Plaintiff, | |
| v. | Case No. 5:22-cv-6045-NKL |
| G2 SECURE STAFF, LLC, | |
| Defendant. | |

## ORDER

Defendant G2 Secure Staff moves to compel the arbitration of plaintiff Alejandra Narcio's claims. Doc. 12. Since G2 has established as a matter of law that there is a valid arbitration agreement that covers Narcio's claims, the Court will grant G2's motion to compel arbitration and dismiss Narcio's case.

## I.     BACKGROUND

### A.  Narcio's Claims

Narcio alleges that G2 discriminated against her in violation of federal and state law. *See generally* Doc. 1-1 (Narcio's Complaint). Specifically, Narcio alleges that she developed a physical disability when working for G2 and consequently requested accommodations. In response, G2 allegedly refused to provide said accommodations, harassed Narcio in hopes that she would quit, demoted Narcio to a job that she could not perform, and told Narcio not to return to work until her restrictions were lifted. *Id.* ¶¶ 18-41.

### B. Arbitration Agreement

G2 argues that Narcio electronically signed a "Pre-Dispute Resolution Agreement" that requires her to arbitrate her claims. In support of its motion, G2 provided a copy of Narcio's application, which includes the Pre-Dispute Resolution Agreement Narcio allegedly electronically signed.[1] The top of the application states:

> Please follow the steps on the bar to the left. When you have a green checkmark in each required section, you will have completed the application. . . . At the end of the application process, you must scroll down and click the forward arrow at the bottom of the page to submit your application for consideration.

Doc. 13-1, at 7-10. The application contains Narcio's name, email address, mailing address, phone number, and work history. *Id.* at 7-9.

On the last page of the application it states, in bold, "**Please read the following agreement carefully before submitting. Only complete applications will be considered**." Doc. 13-1, at 10. Immediately following this statement is the title "Pre-Dispute Resolution Agreement." Below the title, the agreement states:

> [t]o provide fast, fair and inexpensive means of resolving disputes between [G2] and the employees, [G2] has instituted a mandatory binding arbitration program. . . . As part consideration for your employment, you and [G2] agree that in the event a dispute arises between you and [G2] (or its officers, directors, employees, representatives, successors, assigns or agents in their capacity as such) regarding your employment such disputes shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act. This obligation binds [G2] as well as the employees. . . . This pre-dispute resolution agreement is not a contract of employment, expressed or implied. This agreement does not alter the "at will" status of your employment. . . . I have read and understand all of the above, I agreed that by becoming an employee of G2 Secure Staff, LLC, I will resolve any disputes pertaining to my employment through binding arbitration.

Applicants are not prompted to sign this section separately. A new section, titled, "Pre-Employment Agreement" follows. In relevant part it states:

---

[1] The Pre-Dispute Resolution Agreement is attached to the Order as Appendix A.

I hereby certify that I have personally completed this application, that the information contained in it is true, complete and correct. . . . If hired, I agree and understand that I will conform to the polices, practices and procedures of G2. . . . I acknowledge that I have been given the opportunity to ask questions regarding G2's policies and procedures. . . . G2 AND ITS EMPLOYEES ARE SUBJECT TO A MANDATORY BINDING ARBITRATION PROGRAM TO THE EXTENT ALLOWED BY THE LAW

Immediately under the all-capital statement referencing the arbitration provision, the

agreement states:

**Electronic Signature: Please type your name as it is listed in the document above: Ali Narcio.**

I testify that this statement is true to the best of my knowledge:

Next to the statement appears

Alejandra Narcio[2]
Accepted.

G2 also provided a declaration from Diane Schoeberl—G2's director of human resources.

Doc. 13-1 (Schoeberl Declaration), at 1-5. She explained that a third-party vendor, ADP, oversees

G2's online application process; and G2 provides ADP with the information to include in the

application, including the Pre-Dispute Resolution Agreement. *Id.* ¶¶ 2-3. Before accessing the

online application, Narcio needed to create a unique login and password, provide a personal email

address, answer a pre-employment prescreening questionnaire, and then e-sign the prescreening

questionnaire by typing in her name. *Id.* ¶¶ 4-6. Narcio was then directed to the employment

application where she had to provide her name, email address, physical address, telephone number,

work history, and other personal information. *Id.* ¶ 7. Schoeberl stated that, based on her review

of Narcio's application, Narcio provided the required information. *Id.*

---

[2] Neither Party argues that the slight difference in the name Narcio was supposed to provide and the name she actually signed has significance.

Schoeberl further stated that, after completing the application, Narcio was directed to a screen that contained G2's Pre-Dispute Resolution Agreement and Pre-Employment Agreement. *Id.* ¶ 8. Furthermore, Narcio was instructed to submit her e-signature to acknowledge and confirm her consent to the agreements by typing in her name, and failure to type her name would have prevented her from submitting her application. *Id.* Lastly, Schoeberl declared that the Pre-Dispute Resolution Agreement has been included in every application since 2017, and an applicant must sign the Pre-Dispute Resolution Agreement to submit their application. *Id.* ¶¶ 3, 9-10.

## II.   Legal Standard

"The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., declares a 'liberal federal policy favoring arbitration agreements.'" *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). When presented with a motion to compel arbitration, a court must "[1] determine whether a valid arbitration agreement exists between the parties and, [2] if so, whether the subject matter of the dispute falls within the scope of the arbitration clause." *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 740 (8th Cir. 2014) (citation omitted).

Missouri law determines whether a valid arbitration agreement exists between Narcio and G2. *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). Under Missouri law, "[t]he essential elements of any contract, including one for arbitration, are 'offer, acceptance, and bargained for consideration.'" *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (citation omitted).

G2 bears the burden of proving the existence of a valid arbitration agreement. *Baier v. Darden Rests.*, 420 S.W.3d 733, 737 (Mo. Ct. App. 2014). When a motion to compel is supported by materials outside the pleadings, as G2's motion is, then a court analyzes the motion under the

summary judgment standard. *City of Benkelman, Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 881-82 (8th Cir. 2017). Thus, arbitration can only be compelled when the evidence, viewed in the light most favorable to Narcio, presents no genuine dispute of material fact. *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016). A dispute is genuine if a reasonable jury could return a verdict for either party. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). Consequently, G2 bears the burden of proving that a trier of fact could only reasonably find that the Pre-Dispute Resolution Agreement is valid and covers Narcio's claims. *Ascentium Cap. LLC v. Littell*, No. 2:20-CV-04215-NKL, 2022 WL 301685, at *1 (W.D. Mo. Feb. 1, 2022) (citing *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015)); *see also* 10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ § 2727.1 *Grounds for Summary Judgment—Burden on the Moving Party* (4th ed. 2021) (collecting sources).

However, self-serving allegations or sworn testimony do not create a genuine issue of material fact. *Young v. Hoogland Foods, LLC*, No. 4:19 CV 456 CDP, 2020 WL 555106, at *2 (E.D. Mo. Feb. 4, 2020) (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *City of Benkelman*, 867 F.3d at 881-82); *see also Gander Mountain Co. v. Cabela's, Inc.,* 540 F.3d 827, 831 (8th Cir. 2008) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." (citing *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006))).

III.     Discussion

There is no dispute that, if the Pre-Dispute Resolution Agreement is valid, it covers Narcio's claims. However, Narcio argues that the Pre-Dispute Resolution Agreement is not valid and G2 waived its right to arbitration. The Court will address these arguments in turn.

### A. Whether There Is a Valid Arbitration Agreement Between Narcio and G2

#### 1. Must a Reasonable Jury Determine that Narcio Accepted G2's Offer

G2 argues that Narcio accepted the Pre-Dispute Resolution Agreement by electronically signing said agreement. As stated above, G2 has supported that argument by providing the electronically signed agreement. G2 has also provided sworn testimony that the only way to complete an online application, which the Parties agree Narcio did, is to electronically sign it. Furthermore, G2 points out that the agreement was signed after the signer provided a plethora of personal information about Narcio, the veracity of which Narcio does not dispute. To G2, this evidence permits only one reasonable conclusion: that Narcio electronically signed the agreement. *See Barclay v. ICON Health & Fitness, Inc*., No. 19-CV-2970 (ECT/DTS), 2020 WL 6083704, at *10 (D. Minn. Oct. 15, 2020) (concluding that an arbitration agreement must exist because there were only four ways to register as an iFit member, all four ways required plaintiff to sign an arbitration agreement, and plaintiff had registered as an iFit member); *Strain v. Murphy Oil USA, Inc.*, No. 6:15-CV-3246-MDH, 2016 WL 540810, at **1-4 (W.D. Mo. Feb. 9, 2016) (finding defendant established that plaintiff electronically signed an arbitration agreement when it produced the signed agreement and testimony that an applicant would have had to sign the agreement to complete the application); *Young v. Hoogland Foods, LLC*, No. 4:19-cv-456-CDP, 2020 WL 555106, at *2 (E.D. Mo. Feb. 4, 2020) (holding that an electronically signed arbitration agreement and declaration testimony that only plaintiff could have signed the agreement was sufficient to find a valid arbitration agreement existed between the parties); *Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-CV-01099, 2020 WL 6459642, at **4-6 (M.D. Tenn. Nov. 3, 2020) (holding that, under Missouri law, providing an electronic copy of the e-signed arbitration agreement, declaration testimony that the agreement came from employee's file, and documentation that the

employee signed the agreement was sufficient to established that the employee signed the agreement).

Narcio denies that she accepted G2's Pre-Dispute Resolution Agreement. First, Narcio argues that she never signed the Pre-Dispute Resolution Agreement and G2 cannot prove her signature did not auto populate. To support her argument, Narcio points to her own declaration where she stated, "I was never asked, shown, or promoted to acknowledge any agreement to arbitrate or that addressed in any way Defendant's dispute resolution methods or processes." Doc. 18-1, ¶ 10. However, as stated above, ambiguous self-serving statements in a declaration, in the face of irrefutable evidence, do not create an issue of material fact. *See, e.g.*, *Gander Mountain Co.*, 540 F.3d at 831. Courts routinely reject attempts to defeat motions to compel with such self-serving allegations or sworn testimony. *Young*, 2020 WL 555106, at *2 (holding employee's unsworn assertion that he did not recall accepting the arbitration agreement did not create a triable issue); *Franklin v. Cracker Barrel Old Country Store*, No. 4:17-cv-00289-JMB, 2017 WL 7691757, at *2 (E.D. Mo. Apr. 12, 2017) ("[T]estimony that she did not recall reviewing or agreeing to the Arbitration Agreement is not sufficient to refute the CBU system record that she had done so."); *Hammond*, 2020 WL 6459642, at *6 (holding under Missouri law that party's sworn statement that he "do[es] not believe" that he entered into an arbitration agreement and "do[es] not recall reviewing or signing an arbitration agreement" did not create an issue of material fact).

Narcio also points to the fact that, before this litigation began, G2 voluntarily provided Narcio's personnel file, and the Pre-Dispute Resolution Agreement was not included. On April 30, 2021, Narcio's counsel sent a letter requesting Narcio's employment records. Doc. 18-2, at 5 (April 30, 2021 Letter). G2 responded with a copy of Narcio's records, including a copy of

Narcio's application. Doc. 18-2, at 7-30, 14-15. The application is identical to the one G2 produced in support of this motion, except that the second page and the final page—which contained the Pre-Dispute Resolution Agreement and Narcio's electronic signature—was not included. *Compare* Doc. 13-1, at 6–10, *with* Doc. 18-1, at 14–15. Narcio argues that the absence of the Pre-Dispute Resolution Agreement from her produced personnel file precludes G2 from now claiming the agreement exists. Narcio does not cite, nor could the Court identify, any precedent that states a party waives its right to rely upon an arbitration agreement if it chose not to disclose said agreement in response to a pre-lawsuit request for documents. To preclude G2's reliance on the agreement under the circumstances would be an extraordinarily heavy penalty, one that is not justified by information before the Court concerning G2's conduct.

Further, even if the Court were to accept Narcio's argument that the absence of the Pre-Dispute Resolution Agreement in her personnel file is evidence that the agreement G2 now presents was fabricated; no reasonable factfinder could determine that this agreement was forged, merely because it was omitted from a pre-filing request for documents, when Narcio has not rebutted G2's sworn testimony that every applicant for employment must electronically sign a Pre-Dispute Resolution Agreement in order to apply.

Narcio next argues that, even if she signed the Pre-Dispute Resolution Agreement, her signature does not constitute acceptance because she did not sign immediately after the Pre-Dispute Resolution Agreement. The structure of the document shows that Narcio's interpretation is unreasonable as a matter of law. There is no signature line next to, or immediately following, the Pre-Dispute Resolution Agreement. Instead, both the Pre-Dispute Resolution Agreement and Pre-Employment Agreement appeared on the same screen, separate from the rest of the application. Furthermore, the statement immediately before Narcio's electronic signature is: "G2

AND ITS EMPLOYEES ARE SUBJECT TO A MANDATORY BINDING ARBITRATION PROGRAM TO THE EXTENT ALLOWED BY LAW." Doc. 13-1, at 10. The only reasonable interpretation of the document is that, by signing at the end of the page, Narcio accepted both provisions on the page, including the statement in the Pre-Dispute Resolution Agreement that she was bound to arbitrate claims regarding her employment. *See* 17 C.J.S. Contracts § 105 ("A party need not sign every page of a contract in order for the whole contract to be effective.").

Third, Narcio argues that, even if she did sign the agreement, she did not do so knowingly or voluntarily. *See* Doc. 18-1, ¶ 15 ("Moreover and critically, I never knowingly or voluntarily signed any Pre-Dispute Resolution Agreement with Defendant G2 Secure Staff."). However, "under Missouri law, 'a person who has an opportunity to read a document but signs it without doing so is held to have knowledge of the document's contents, absent a showing of fraud.'" *Midwest Printing, Inc. v. AM Int'l, Inc.*, 108 F.3d 168, 170 (8th Cir. 1997) (citation omitted); *see also Strain v. Murphy Oil USA, Inc.*, No. 6:15-CV-3246-MDH, 2016 WL 540810, at *4 (W.D. Mo. Feb. 9, 2016) ("Under Missouri law, courts are reluctant to find a lack of contractual 'acceptance' based on this argument."). Thus, even if Narcio did not read the arbitration agreement, she is still bound by its terms.

Furthermore, insofar as Narcio seeks to argue that she signed the Pre-Dispute Resolution Agreement under duress, she must do more than allege or argue that point. *Hollis v. Veolia Transp., Inc.*, No. 11-0209-CV-W-SOW, 2011 WL 5084596, at *3 (W.D. Mo. Oct. 18, 2011) (rejecting plaintiff's argument that she was coerced into signing the arbitration agreement because there was no evidence she was coerced). The fact that Narcio had to sign the agreement in order to apply for work does not render her signature and acceptance involuntary. *Stillwell v. SLH Vista Inc.*, No. 4:15-cv-1465-HEA, 2016 WL 5661626, at *3 (E.D. Mo. Sept. 30, 2016) ("Plaintiff was

9

free not to sign the Acknowledgment, and her employer's requirement that she sign the document in order to secure employment does not rise to the level of duress." (citing *Schmalz v. Hardy Salt Co.*, 739 S.W.2d 765, 768 (Mo. App. Ct. 1987)). Narcio has not created a genuine issue of material fact on this point.

### 2. Must a Reasonable Jury Determine that the Pre-Dispute Resolution Agreement Constituted an Offer

Narcio cursorily argues that the Pre-Dispute Resolution Agreement was not an offer. Under Missouri law, an offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *LoRoad, LLC v. Glob. Expedition Vehicles, LLC*, 787 F.3d 923, 928 n.3 (8th Cir. 2015). The language of the Pre-Dispute Resolution Agreement shows that G2 was manifesting an intent to bind itself since the proposed agreement explicitly stated G2 would be bound to arbitrate if Narcio accepted the offer. Doc. 13-1, at 10 (stating the agreement binds both G2 and Narcio). Furthermore, both the title, "Pre-Dispute Resolution Agreement," and the fact that G2 was not required to perform any further steps to accept the agreement, indicate that G2 made an offer that would become binding upon Narcio's acceptance. *Franklin*, 2017 WL 7691757, at **3-4 ("It is equally clear that an employee who was viewing the document would understand that the offered terms would become binding upon acceptance, as the Arbitration Agreement refers to itself as a 'Dispute Resolution Agreement.'"); *Williams v. Kemper Corp.*, No. 3:21-CV-1341-NJR, 2022 WL 2192864, at *2 (S.D. Ill. June 17, 2022) (stating that, under Missouri law, "the use of words such as 'contract' or 'agreement'—while not essential—can be evidence of an offer to form a contract" (collecting sources)).

### 3. Must a Reasonable Jury Conclude the Pre-Dispute Resolution Agreement Was Supported by Consideration

Narcio argues that the Pre-Dispute Resolution Agreement was not supported by valid consideration because Narcio was hired as an at-will employee. However, Missouri law makes clear that mutual promises to arbitrate are supported by adequate consideration if said promises are not illusory. *Strain*, 2016 WL 540810, at \*4; *see also, e.g.*, *State ex rel. Hewitt v. Kerr,* 461 S.W.3d 798, 809 (Mo. 2015) (holding the agreement was supported by consideration because both Parties agreed to submit their disputes to arbitration). "A promise is binding rather than illusory if neither 'party retains the unilateral ability to avoid its contractual obligations.'" *Colton v. Hibbett Sporting Goods, Inc.*, No. 2:16-CV-04002-NKL, 2016 WL 3248578, at \*3 (W.D. Mo. June 13, 2016) (quoting *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 30 (Mo. Ct. App. 2008)).

Here, the Pre-Dispute Resolution Agreement explicitly binds G2 and Narcio to arbitrate any dispute that cannot be resolved internally. Doc. 13-1, at 10 ("As part consideration for your employment, *you and the Company* agree that in the event a dispute arises . . . regarding your employment such disputes shall be submitted to and determined exclusively by binding arbitration. . . . [T]his obligation *binds the company as well as the employees.*" (emphasis added)). Neither Party had the right to unilaterally alter the agreement. As such, the Pre-Dispute Resolution Agreement was, as a matter of law, supported by adequate consideration.

## B. Whether G2 Waived Its Right to Arbitration

Narcio argues that G2 waived its right to compel arbitration when it removed the case to this Court. A party waives its right to arbitration if it "(1) knew of an existing right to arbitration [and] (2) acted inconsistently with that right." *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016). "A party acts inconsistently with its right to arbitrate if the party '[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right.'" *Lewallen*

*v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (quoting *Ritzel Commc'ns, Inc. v. Mid–American Cellular Tel. Co.,* 989 F.2d 966, 969 (8th Cir. 1993)).  However, a party does not act inconsistently with its right to arbitrate when it has not attempted to litigate the merits of the case.  *See Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 793 (8th Cir. 1998) ("Golf U.S.A. has not acted inconsistently with its right to arbitration because Golf U.S.A. has not attempted to litigate the merits of the case."); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) (holding the "district court properly found that Gatsby did not waive its right to arbitrate" when the party had merely removed the case and sought to compel arbitration); *cf Ritzel Commc'ns, Inc.,* 989 F.2d at 969 ("[A]n extensive motion to dismiss on the merits is inconsistent with a right to arbitrate.").

G2 has not sought a merits-based dismissal.  Rather, G2 sought to pause the litigation of the case's merits by staying discovery, Doc. 14, and sought dismissal based only on the Pre-Dispute Resolution Agreement.  Doc. 12.  G2's removal of the case was not an attempt to litigate the merits of the case; rather, it affected only the *forum* where the parties would litigate G2's motion to compel arbitration, and G2 therefore did not waive its right to arbitration by removing its case.  *See Femmer v. Sephora USA, Inc.*, No. 4:20-cv-676-JMB, 2021 WL 735685, at *4 (E.D. Mo. Feb. 25, 2021) ("To the extent that plaintiff implies that removal itself resulted in waiver, that argument has been rejected." (collecting cases)); *Randazzo v. Anchen Pharms., Inc.*, No. 4:12-CV-999-CAS, 2012 WL 5051023, at *8 (E.D. Mo. Oct. 18, 2012) ("The mere act of removing a case to federal court does not constitute a waiver of the right to arbitrate.") (citing *Cicle v. Chase Bank USA*, 583 F.3d 549, 551, 557 (8th Cir. 2009)); *Rigsby v. XL Health Corp.*, No. 11-00261-CV-W-DGK, 2011 WL 2563179, at *2 (W.D. Mo. June 28, 2011) ("Removal is a procedural action that is not inconsistent with a party's right to arbitrate the merits." (collecting sources)).

Narcio alleges this case law has been abrogated by the recent Supreme Court decision in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022). Before *Morgan*, the Eighth Circuit held that, for waiver to apply, the party opposing arbitration had to show that it was prejudiced by the party seeking to compel arbitration when said party acted inconsistently with its right to arbitrate. *Messina*, 821 F.3d at 1050. *Morgan* abrogated the prejudice requirement. 142 S. Ct. 1708. *Morgan* did not, however abrogate the requirement that a party be found to have acted inconsistently with its right to arbitrate for waiver to apply. Thus, *Morgan* does not alter the Court's conclusion that G2 did not waive its right to arbitration.

### C. Whether the Case Should be Stayed or Dismissed

The FAA generally requires a court to stay an action pending an arbitration. *See* 9 U.S.C. § 3 (stating district courts "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). However, when all of a party's claims are covered by an arbitration agreement, the district court has the discretion to either stay or dismiss the case. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) ("The district court relied upon a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.").

All of Narcio's claims are covered by the Pre-Dispute Resolution Agreement. *See supra* Section III. The Court will consequently exercise its discretion to dismiss Narcio's claims. *Jann v. Interplastic Corp.*, 631 F. Supp. 2d 1161, 1167 (D. Minn. 2009) ("[T]he majority of courts, including this Court, have held that a stay serves no obvious purpose and dismissal is appropriate 'where the entire controversy between the parties is subject to and will be resolved by arbitration.'"

Case 5:22-cv-06045-NKL   Document 22   Filed 07/26/22   Page 13 of 14

(collecting cases)), *rev'd on other grounds*, *Green v. SuperShuttle Int'l, Inc.,* 653 F.3d 766, 770 (8th Cir. 2011).

## IV.    CONCLUSION

For the reasons set forth above, G2's motion to compel arbitration, Doc. 12, is granted, and this case is dismissed.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 26, 2022
Jefferson City, Missouri